IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DUANE GARCIA, | § | |
| TDCJ #1215691, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0504 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| Respondent.[1] | § | |

## MEMORANDUM AND ORDER

State inmate Duane Garcia (TDCJ #1215691), also known as Juan Manuel Martinez, has filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court felony conviction. The respondent has filed a motion for summary judgment, arguing that Garcia is not entitled to federal habeas corpus relief. (Doc. #8). Garcia has filed more than one response to the summary judgment motion, as well as a request for discovery. (Doc. #11, #12, #13). After considering all of the pleadings, the records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons that follow. **I.**     **BACKGROUND**

On June 5, 2003, a state grand jury returned an indictment against Garcia in cause number 951060, charging him with assault on a public servant. Specifically, the indictment accused Garcia of kicking a peace officer as he was performing an official duty by

---

[1]     On June 1, 2006, Nathaniel Quarterman replaced the former respondent, Doug Dretke, as Director of the Texas Department of Criminal Justice - Correctional Institutions Division. Thus, under Rule 25(d) of the Federal Rules of Civil Procedure, the Court automatically substitutes Quarterman as the proper respondent in this action.

investigating a reported disturbance.  The State enhanced the indictment with allegations that Garcia had at least two prior felony convictions, making him eligible for punishment as a habitual offender.[2]

Garcia waived his right to a jury in favor of bench trial before the 263rd District Court of Harris County, Texas, which occurred on January 26, 2004.  The evidence presented by the State during this one-day affair demonstrated that the incident at issue happened during a police investigation by an officer with the Houston Police Department ("HPD") while he investigated a reported public disturbance by an intoxicated person (Garcia) at a local convenience store.  The evidence shows that the disturbance escalated to resisting arrest and culminated in an assault on a public servant, namely, HPD Officer E.H. Wiggins, when he attempted to place Garcia under arrest for public intoxication.  A summary of the evidence presented at trial is set forth below.

As its first witness, the State called Ron Sugar, a deputy constable employed by Fort Bend County, Precinct Two.  *See Court Reporter's Record*, at 11.  Constable Sugar testified that, at approximately 10:00 p.m. on December 19, 2002, he was purchasing gasoline at a

---

[2]     The record reflects that Garcia had numerous prior convictions that the State intended to introduce at trial, if appropriate, including convictions for:  delivery of a controlled substance (cause no. 704950, 174th Dist. Ct., August 17, 1999); unlawfully carrying a weapon (cause no. 9528689, Harris Cty. Ct. #11, July 24, 1995); unlawfully carrying a weapon (cause no. 9448491, Harris Cty. Ct. #8, Dec. 14, 1994); forgery (cause no. 576195, 228th Dist. Ct., Nov. 6, 1990); DWI (cause no. 9024688, Harris Cty. Ct. #1, May 21, 1990); unlawfully carrying a weapon (cause no. 9008668, Harris Cty. Ct. #14, March 15, 1990); DWI (cause no. 9019447, Harris Cty. Ct. #1, May 21, 1990); resisting arrest (cause no. 8833214, Harris Cty. Ct. #11, Nov. 29, 1988);  burglary of a habitation (cause no. 461210, 178th Dist. Ct., Jun 17, 1987); and burglary of a habitation (cause no. 309724, 183rd Dist. Ct., Feb. 18, 1980).  *See Ex parte Garcia*, No. 63,501-01 at 154, 160-71.

2

convenience store located in Harris County.  *See id.* at 13.  When he went inside the convenience store to pay for the gasoline, he noticed Garcia, and he further observed that the cashier looked "afraid." *Id.* at 14, 16.  When Constable Sugar produced his badge and asked if everything was alright, Garcia grabbed Constable Sugar's arm and shoved him.  *Id.* at 17.  Constable Sugar asked the cashier if she wanted him to call for a police unit and, as he stepped outside to call for assistance, HPD Officer Wiggins happened upon the scene.  *Id.* at 18.

Constable Sugar told Officer Wiggins, who was in uniform, that Garcia was inside the store, that he was belligerent, and that he appeared intoxicated. *Id.* at 19, 26.  Constable Sugar testified that Officer Wiggins went into the store to investigate and asked Garcia to sit down on the floor while he interviewed the cashier.  *Id.* at 21, 26.  Garcia would not obey and a struggle ensued.  *Id.* at 21-22.  When Office Wiggins attempted to arrest him, Garcia "started kicking and pushing." *Id.*  Constable Sugar testified that he saw Garcia kick Officer Wiggins in the leg during the struggle.  *Id.* at 23.  As Officer Wiggins and Constable Sugar attempted to escort Garcia from the store, Garcia spit on Constable Sugar and called him a "nigger."  *Id.* at 23-24.  At that point, Garcia was placed in a back-up police unit that had arrived at the scene.  *Id.*  Once in the car, Garcia, who was cursing loudly all the while, turned around in the back seat and kicked the back window out of the police unit.  *Id.* at 24.  Garcia was so belligerent that officers had to place additional restraints on him.  *Id.* at 25.  Garcia then threatened to kill Constable Sugar and the other officers.  *Id.*  "I'm going to kill all you motherfuckers," were the words Garcia reportedly used.  *Id.* at 26.

3

In questioning Constable Sugar on cross-examination, Garcia's counsel attempted to demonstrate that the alleged kick that injured Officer Wiggins could have been inadvertent or accidental as the result of the struggle. Constable Sugar clarified that he saw Garcia struggling to resist arrest, and that it was his opinion that Garcia kicked Officer Wiggins on purpose, intentionally, and not by accident. *Id.* at 42.

Officer Wiggins also testified about the events that took place at the convenience store on December 19, 2002. Officer Wiggins explained that he was on his way home after having just gotten off duty when he pulled into the convenience store. *Id.* at 46. Officer Wiggins stated that he was flagged down by Constable Sugar, who reported that there was an intoxicated male in the store who was agitating the cashier and who had grabbed his arm. *Id.* at 46-47. Once in the store, Officer Wiggins reported that he could "clearly see" that Garcia was intoxicated because he was "talking with very slurred speech and ha[d] a strong odor of alcohol coming from his breath." *Id.* at 47. With Constable Sugar's assistance, Officer Wiggins located Garcia's car and determined that Garcia had driven to the store while in an intoxicated state. *Id.* at 50.

Officer Wiggins testified that, after he decided to arrest him for "public intoxication," Garcia became violent and that an altercation ensued. *Id.* at 50-51. As Officer Wiggins attempted to subdue Garcia, who would not obey commands to calm down, Garcia kicked Officer Wiggins in the left leg as the two struggled on the floor. *Id.* at 51. Officer Wiggins testified that the blow caused pain and that he believed the kick was intentional. *Id.* at 52, 61. As Officer Wiggins called for back up, Garcia began to curse and call him names. *Id.*

4

at 53.  After Garcia was secured in the back of a patrol car, Officer Wiggins took a statement

from the cashier and began to complete a "tow slip" for Garcia's car.  *Id.* at 56.  At that

point, he noticed that Garcia had kicked out the back window of the patrol car.  *Id.*  Officer

Wiggins testified that he was in uniform as a licensed peace officer and that at all times after

he entered the convenience store he was performing an official duty by investigating a

reported disturbance.  *Id.* at 54.

Garcia testified on his own behalf at the trial.  Garcia explained that he drove to the

convenience store that night after having "a couple of beers" after work because he had

become lost and needed directions.  *Id.* at 70.  Garcia testified that he was only making

"friendly conversation" with the cashier when Constable Sugar intervened in an intimidating

manner.  *Id.* at 72, 76.  Although Garcia denied touching Constable Sugar in any way, Garcia

claimed that he became upset after Constable Sugar threatened to press assault charges

against him.  *Id.* at 74.  Garcia denied that he became disruptive once Officer Wiggins

arrived and he denied calling Constable Sugar a racist name.  *Id.* at 78.  Garcia also testified

that he "[didn't] recall kicking anybody" that evening.  *Id.* at 81.  Garcia admitted, however,

that he "shattered" the patrol car window in frustration after being placed in custody and that

he was "yelling" at the officers.  *Id.* at 80.

On cross-examination, Garcia conceded that he had been drinking that night and that

he also had been driving.  *Id.* at 88.  Garcia admitted further that he had lied to the police

when questioned about drinking and driving, saying initially that he had been dropped off

at the convenience store, because he did not have "a driver's license, or insurance, or

5

nothing." *Id.* at 89-90, 100.  According to Garcia, both Constable Sugar and Officer Wiggins were lying about his behavior inside the convenience store.  *Id.* at 93, 96.

After hearing all of the evidence, and closing argument from counsel, the trial court found Garcia guilty as charged.[3]  After Garcia conceded that the enhancement allegations were true, the trial court imposed a twenty-five year prison sentence.[4]  On direct appeal, Garcia's counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), asserting that a professional evaluation of the record revealed no meritorious issue to raise.  The intermediate state court of appeals agreed that the appeal was "wholly frivolous" and affirmed the conviction in an unpublished opinion.  *Garcia v. State*, No. 14-04-00063-CR, 2004 WL 1946084 (Tex. App. — Houston [14th Dist.] Sept. 2, 2004, no pet.).

Garcia also filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure.  In that application, Garcia argued that he was entitled to relief for the following reasons: (1) he was denied effective assistance of counsel; and (2) the trial court abused its discretion by denying his motion for appointment of new counsel.

---

[3]     Garcia does not challenge the sufficiency of the evidence.  It is worth noting, however, that in Texas the evidence is legally sufficient to support a conviction for assault on a public servant where the State proves that the defendant struck a uniformed police officer while he was in the process of detaining him in response to a public-disturbance complaint.  *See, e.g., Gearhart v. State*, 122 S.W.3d 459, 467-68 (Tex. App. — Corpus Christi 2003, pet. ref'd).

[4]     Before the trial commenced, Garcia's counsel noted on the record that his client had rejected a proposed plea agreement that would have allowed him to plead guilty to the assault charge, which was a third-degree felony punishable by up to ten years in prison, without an agreed recommendation by the prosecution as to the sentence.  *Court Reporter's Record* at 7.  Garcia acknowledged that, by rejecting the offer and insisting on a trial, he faced a minimum sentence of twenty-five years to a maximum of life imprisonment as a habitual offender.  *See id.* at 8.

After considering an affidavit from Garcia's trial attorney, the state habeas corpus court entered findings and concluded that Garcia was not entitled to state habeas corpus relief. The Texas Court of Criminal Appeals agreed and denied relief without a written order on the findings made by the trial court. *See Ex parte Garcia*, No. 63,501-01 (Dec. 21, 2005).

Garcia now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his conviction for assault on a public servant. Garcia raises claims similar to those rejected on state habeas corpus review. The respondent has filed a motion for summary judgment, arguing that Garcia is not entitled to relief on any of his claims. Garcia disagrees. In addition to his response to the summary judgment motion, Garcia has also filed a motion for discovery and he requests an evidentiary hearing. The parties' contentions are discussed below, beginning with the respondent's motion for summary judgment.

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment

The respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

7

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted). "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman*, 369 F.3d at 860 (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

The petitioner proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519 (1972).  Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

**B.     Habeas Corpus Review Under 28 U.S.C. § 2254(d)**

The federal writ of habeas corpus is an extraordinary remedy, which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness").  The pending federal habeas corpus petition is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See*

*Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas

corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles

of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28

U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court

proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S.

1067 (2001).  Specifically, the AEDPA has "modified a federal habeas court's role in

reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." *Bell v.*

*Cone*, 535 U.S. 685, 693 (2002).

To the extent that Garcia raised his claims on state habeas corpus review, those claims

were denied by the Texas Court of Criminal Appeals without a written order.  A denial of

relief by the Court of Criminal Appeals serves as an adjudication on the merits of the claim.

*See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.) (citing *Ex parte Torres*, 943 S.W.2d 469,

472 (Tex. Crim. App. 1997)), *cert. denied*, 531 U.S. 849 (2000); *see also Singleton v.*

*Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (noting that, under Texas law, a denial of relief

rather than a dismissal of the claim by the Court of Criminal Appeals disposes of the merits

of a claim).  Accordingly, the federal habeas corpus standard of review, as amended by the

AEDPA, applies to the petitioner's claims as long as they were adjudicated on the merits and

not dismissed for procedural reasons.[5]  *See Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002) (citing *Valdez v. Cockrell*, 274 F.3d 941, 946-48 (5th Cir. 2001)); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (concluding that when a state habeas corpus court rejects a petitioner's claim on procedural grounds, there has not been an "adjudication on the merits" as contemplated by the AEDPA).

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  For claims adjudicated on the merits, the AEDPA's amendments provide that a petitioner is not entitled to relief unless the state court's adjudication:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).  The petition and supporting memorandum filed in this instance fall short of

---

[5]  Additionally, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

meeting the petitioner's burden to show that he is entitled to relief under the governing standard. Nevertheless, the Court will attempt to review his claims under the liberal construction applicable to *pro se* pleadings.

Courts are to review pure questions of law and mixed questions of law and fact under § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the first ("contrary to") clause, a federal district court may grant habeas relief only if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief only if the state court correctly divined a legal principle from the Supreme Court's jurisprudence, but misapplied that principle to the facts. *See id*. A federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

Section 2254(d)(2) governs pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding. *See Brewer v. Dretke*, 410 F.3d 773, 775

(5th Cir. 2005) (citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified on denial of rehearing)).  In addition, any factual findings made by the state court in deciding a petitioner's claims are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence to the contrary."  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  The petitioner's claims are discussed further below under the applicable law.

### III.   <u>DISCUSSION</u>

#### A.   **Ineffective Assistance of Counsel**

Garcia alleges that he was denied his right to effective assistance of counsel because his attorney, Juan Contreras, failed to do the following: (1) to file a pre-trial motion to quash the indictment; (2) to call two witnesses at trial; and (3) to discover and present a videotape at trial.  After considering an affidavit from Contreras, the state habeas corpus court rejected the ineffective-assistance claims and found that Garcia failed to show that his counsel's conduct fell below an objective standard of reasonableness or that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.  *Ex parte Garcia*, No. 63,501-01 at 88.  To prevail, Garcia must demonstrate that this decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the effective assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  To establish ineffective assistance of counsel in violation of the Sixth

Amendment, a defendant must satisfy the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984) by demonstrating both of the following: (1) that his counsel's performance was deficient; and (2) that the deficiency prejudiced his defense. Failure to prove either prong of the *Strickland* test will defeat an ineffective-assistance claim. *See Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998)).

To establish deficient performance under the *Strickland* test, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption  that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 543 U.S. 1056 (2005).  Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined.  *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)).  Garcia fails to demonstrate that his counsel's performance was deficient or that he was actually prejudiced as a result for reasons discussed in more detail below.

**1.    Failure to Object to the Charging Instruments**

Garcia alleges that his counsel was deficient because he failed to object or file a motion to quash the indictment.  The state grand jury charged Garcia with assault on a public servant.  In Texas, a criminal defendant commits the offense of assault on a public servant where he intentionally, knowingly, or recklessly causes bodily injury to another who the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant.  *See* TEX. PENAL CODE § 22.01(b)(1).  An actor is presumed to know the person assaulted was a public servant or security officer if the person was wearing a distinctive uniform or badge indicating the persons's employment as a public servant or security officer.  *See id*. at § 22.01(d).

A review of the indictment shows that it comports with the elements of the offense charged.  The indictment in this case alleged that, on or about December 19, 2002, Garcia "did then and there unlawfully, intentionally and knowingly cause bodily injury to E. Wiggins, hereinafter called the Complainant, A PERSON THE DEFENDANT KNEW WAS A PUBLIC SERVANT WHILE THE COMPLAINANT WAS LAWFULLY DISCHARGING AN OFFICIAL DUTY, TO-WIT: INVESTIGATING A DISTURBANCE, by KICKING THE COMPLAINANT." *Ex parte Garcia*, No. 63,501-01 at 95 (emphasis in original).

Garcia does not show that the indictment failed to charge the required elements of an offense.  Instead, Garcia objects that the name of the victim referenced in the indictment failed to conform with the name alleged in an original complaint that was reportedly

prepared in his case.  According to Garcia, the original complaint asserted that Constable Sugar was the peace officer assaulted.  In the indictment, however, Garcia was accused of assaulting Officer Wiggins.

As the respondent correctly notes, a complaint is not the same thing as a formal indictment.  In Texas, a complaint is an "affidavit made before the magistrate or district or county attorney . . . [that] charges the commission of an offense."  TEX. CODE CRIM. PROC. art. 15.04.  An indictment is a "written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense."  TEX. CODE CRIM. PROC. art. 21.01.  In Texas, an indictment shall be deemed sufficient if it contains the following statutory requirements:

1.    It shall commence, "In the name and by authority of The State of Texas".

2.    It must appear that the same was presented in the district court of the county where the grand jury is in session.

3.    It must appear to be the act of a grand jury of the proper county.

4.    It must contain the name of the accused, or state that his name is unknown and give a reasonably accurate description of him.

5.    It must show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented.

6.    The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation.

7.    The offense must be set forth in plain and intelligible words.

8.    The indictment must conclude, "Against the peace and dignity of the State".

9.    It shall be signed officially by the foreman of the grand jury.

16

TEX. CODE CRIM. PROC. art. 21.02.

On state habeas corpus review, Garcia's counsel explained that he did not raise an objection to the indictment because it would have been "frivolous and a waste of the court's time." *Ex parte Garcia*, No. 63,501-01 at 80.  This Court agrees.  Garcia has not shown that there was a deficiency in the formal charging instrument approved by the grand jury.  In that respect, Garcia has not shown that the indictment fails to comport with Texas law or that his counsel had a valid objection to make.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).  Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, Garcia fails to demonstrate deficient performance or actual prejudice.  *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.") (citations omitted).  Accordingly, Garcia fails to show that he received ineffective assistance of counsel in connection with any failure to object to the charging instrument.

### 2.    Failure to Call Witnesses

Garcia complains that his attorney was deficient for failing to call two witnesses at his trial, including an individual named Karen McMahon and an unidentified store manager who witnessed the incident in which he assaulted a police officer.  Garcia does not provide any details about the store manager or the proposed testimony from this witness.  He does, however, present a written report of an interview with McMahon that was conducted by the investigator appointed to assist Garcia's defense.  *See Ex parte Garcia*, No. 63,501-01 at 61-

17

64. According to that report, McMahon saw Garcia shove a customer, referring to Constable Sugar, and that Garcia "went nuts" when Officer Wiggins showed up. *Id.* at 62. McMahon said that Garcia "wouldn't do what the cop told him to do" and that, although she did not see the assault take place, she could tell that Garcia "was putting up a good fight" during his struggle with the officers. *Id.* When asked if Garcia was drunk, McMahon acknowledged that he was "messed up" and that he was "hollering and screaming." *Id.* at 63.

The Fifth Circuit has emphasized that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. (citation omitted.) Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986) (citations omitted)). To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Garcia does not allege or show that either uncalled witness would have testified on his behalf at trial or, more importantly, that either individual had anything favorable to say. Even assuming that McMahon had been available to testify, Garcia fails to demonstrate that his counsel was deficient for failing to call her as a witness. As Contreras explained to the state habeas corpus court, he did not call McMahon as a witness for strategic reasons

because, based on the statements that she provided to his investigator, her testimony would not have benefitted Garcia's case.  *Ex parte Garcia*, No. 63,501-01 at 87-88.  "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance."  *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003) (citing *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal citations and quotation marks omitted)), *cert. denied*, 540 U.S. 1186 (2004).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Cotton*, 343 F.3d at 752-53 (citing *United States v. Jones*, 287 F.3d 325, 331 (5th Cir.) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)), *cert. denied*, 537 U.S 1018 (2002)).  In light of McMahon's comments to the investigator, Garcia fails to show that his counsel's strategic decision to not call her as a witness was so unreasonable as to taint his trial with obvious unfairness.  It follows that Garcia does not demonstrate either deficient performance or actual prejudice with respect to any uncalled witnesses.

### 3.    Failure to Discover and Present the Videotape

Garcia complains that his attorney was deficient for failing to investigate and obtain the surveillance videotape from the convenience store at his trial.  Garcia provided no evidence or facts in support of this claim in his state habeas corpus petition or memorandum.  *See Ex parte Garcia*, No. 63,501-01 at 2-24.  Rather, his state court pleadings make only two isolated references to a videotape.  *See id.* at 16, 17.  There is no information in the state

court pleadings showing that a videotape of the incident actually existed or, if it did, how its contents would have altered the result of the trial. For this reason, the state habeas corpus court summarily rejected this ineffective-assistance claim as conclusory. *See id.* at 88.

A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). The Fifth Circuit has "made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir.) (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983)), *cert. denied*, 537 U.S. 1084 (2002). Because he presented no information in support of his claim, Garcia does not show that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Nor does he show that the state court's decision was based on an unreasonable determination of the facts in light of the evidence — or lack thereof — that was presented by Garcia. 28 U.S.C. § 2254(d)(2).

Garcia now claims, for the first time on federal habeas corpus review, that the videotape might have been helpful to reveal inconsistencies in the testimony and to show that he kicked Officer Wiggins, if at all, accidentally and not intentionally. Garcia's speculation about what the videotape might have shown is not sufficient to state a viable claim for

ineffective assistance of counsel. *See Collier*, 300 F.3d at 587. Moreover, Garcia's conclusory allegations do not demonstrate deficient performance or actual prejudice because they do not overcome the presumption that any failure to present the videotape was reasonable trial strategy in this instance. *See Strickland*, 466 U.S. at 689. In that regard, Garcia's counsel had access to the eye-witness account by Karen McMahon, whose comments were summarized in the above-referenced investigative report. McMahon's personal observations of Garcia's belligerent conduct in the convenience store are consistent with the testimony given by Constable Sugar and Officer Wiggins. A reasonable criminal defense attorney could have concluded that a videotape of the incident would only have further undermined his client's credibility and would not have helped his case. Accordingly, Garcia fails to show that his counsel was ineffective for failing to present a videotape of the incident.

In summary, Garcia has failed to show that the alleged shortcomings by his counsel constitute deficient performance. Likewise, Garcia has not established that he was actually prejudiced by any so-called deficiency on his counsel's part. As a result, Garcia has failed to demonstrate a valid claim for ineffective assistance of counsel and he has further failed to show that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, the *Strickland* standard. It follows that Garcia is not entitled to federal habeas corpus relief on this issue.

**B.    Garcia's Request for New Counsel**

Garcia complains that the trial court abused it discretion by denying his request for appointment of new counsel without a hearing.  According to the record, Garcia filed two hand-written *pro se* motions expressing dissatisfaction with his counsel prior to trial.  *See Ex parte Garcia*, No. 63,501-01 at 121, 176.  Garcia also made an oral motion for new counsel during trial at the start of the State's case-in-chief.[6]  *See Court Reporter's Record* at 14.  Thus, Garcia claims that the trial court erred by failing to make an adequate factual inquiry into his requests for new counsel.

Noting that Garcia did not raise this issue on direct appeal, the state habeas corpus court rejected this claim for procedural reasons.  *Ex parte Garcia*, No. 63,501-01 at 88.  Specifically, the state habeas corpus court found that Garcia was "procedurally barred" from raising his claim about the trial court's alleged abuse of discretion because he failed to present that claim on direct appeal.  *See id*. (citing *Ex parte Gardner*, 959 S.W.2d 189, 1999 (Tex. Crim. App. 1998)).  Alternatively, the state habeas corpus court found that Garcia had failed to allege "sufficient facts which, if true, would show that the trial court abused its discretion."  *See Ex parte Garcia*, No. 63,501-01 at 88 (citing *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985)).  Noting that the state habeas corpus court rested its primary decision on a state procedural rule, the respondent argues that this claim is barred by the doctrine of procedural default.  In the alternative, the respondent argues that Garcia's claim is without merit.  These arguments are addressed in turn.

---

[6]     Garcia's pre-trial proceedings were held before Judge Jim Wallace of the 263rd District Court of Harris County, Texas.  Garcia's court trial was held before a visiting judge, the Honorable Jon Hughes.

### 1.    Procedural Default

Garcia concedes that he did not raise his complaint about the trial court's alleged abuse of discretion on direct appeal.  "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "This doctrine ensures that federal courts give proper respect to state procedural rules."  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997),  *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (explaining that the cause and prejudice standard is "grounded in concerns of comity and federalism"); *Coleman*, 501 U.S. at 750 (recognizing "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them").

Garcia does not demonstrate that the fundamental-miscarriage-of-justice exception applies in this case.[7]  Accordingly, federal habeas corpus review of the merits of his defaulted claims depends on whether he can demonstrate cause and actual prejudice for his

---

[7]    A fundamental miscarriage of justice may be found if the petitioner can show that he is actually innocent of the crime of which he was convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). A petitioner who claims that he is actually innocent of the underlying crime must show that, based on reliable evidence not presented at trial by reason of a constitutional violation, it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *See House v. Bell*, — U.S. —, 126 S. Ct. 2064, 2076-77 (2006); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

failure to present his claims properly on state habeas corpus review.  The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim."  *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir.), *cert. denied*, 520 U.S. 1267 (1997).  Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000), *cert. dism'd*, 531 U.S. 1134 (2001) (citing *Strickler v. Green*, 527 U.S. 263, 119 S. Ct. 1936, 1952 (1999)).

Garcia attempts to show cause by blaming his appellate counsel, who filed an *Anders* brief on direct appeal.  (Doc. #13, at 2).  Ineffective assistance of counsel can constitute cause in certain circumstances.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488-489 (1986)).  Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Id*. In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim.  *Id.*  Garcia has not raised a discrete ineffective-assistance claim on federal habeas review concerning any alleged deficiency on his appellate counsel's part. Likewise, Garcia did not raise such a claim on state habeas corpus review.  An unexhausted

ineffective assistance claim "must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Carrier*, 478 U.S. at 489). Accordingly, Garcia's allegation of ineffective-assistance by appellate counsel fails to demonstrate cause in this instance.

Garcia alleges no other facts showing that cause exists to excuse his default. To the extent that Garcia represents himself in this matter, it is well established that neither indigence nor *pro se* status constitutes cause for a petitioner's procedural default. *See, e.g., McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995) (recognizing that a petitioner's *pro se* status is not an objective external factor which qualifies as cause for failure to raise a claim) (citing *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992)). Garcia points to no other objective factor external to his defense which prevented his compliance with state procedure. Likewise, Garcia fails to demonstrate actual prejudice by establishing that his claim is valid. The Court concludes therefore that Garcia's claim is barred from federal habeas corpus review by the doctrine of procedural default. Alternatively, for reasons discussed below, Garcia fails to establish that he is entitled to federal habeas corpus relief because his claim is without merit.

## 2.    Garcia's Claim is Without Merit

The record shows that Garcia made at least three attempts to dismiss his court-appointed counsel. Garcia filed his first motion for "reappointment" of new counsel on April 13, 2003. *See Ex parte Garcia*, No. 63,501-01 at 121-23. A review of that motion shows that he was dissatisfied because he perceived that his attorney had not investigated his case.

Garcia demanded new counsel and the appointment of an investigator to interview potential witnesses on his behalf. *See id*. at 121-27. The record shows that, before Garcia filed his *pro se* motions, his counsel had already submitted a motion for the appointment of an investigator on March 11, 2003.[8] *See id*. at 143-44. Ultimately, the trial court granted the motion filed by Garcia's counsel and appointed an investigator. *See id*. at 145. The trial court did not rule on Garcia's first motion for new counsel.

On July 21, 2003, Garcia filed a second written motion seeking the appointment of new counsel. *See Ex parte Garcia,* 63,501-01 at 176-78. In this motion, Garcia complained that his counsel had failed to object or file a motion to quash the indictment. *See id*. The docket sheet reflects that the trial court held a hearing on Garcia's motion to dismiss his appointed counsel on August 1, 2003. *See id*. at 219. The docket sheet indicates that a court reporter was present, but there is no transcript of the proceeding in the record. *See id*. The Clerk of Court recorded on the docket sheet, however, that Garcia appeared in person at that time with his counsel of record before the trial judge.[9] *See id*. The docket sheet further reflects that the trial court denied Garcia's motion to dismiss his attorney without a written order. *See id*.

---

[8]     On that same date, March 11, 2003, Garcia's counsel also filed other motions on his client's behalf, seeking discovery and disclosure of evidence and expert witnesses. *See id*. at 146-52.

[9]     Garcia alludes to this proceeding at the start of his trial, when he references "problems" that were raised previously before Judge Wallace, who presided over Garcia's pretrial settings. *See Court Reporter's Record* at 9.

Trial commenced on January 26, 2004.  Shortly after the State began its case-in-chief, Garcia interrupted the testimony with a *pro se* oral motion to renew his request for the appointment of new counsel.  *Court Reporter's Record* at 14-16.  The trial court admonished Garcia that trial had already started and informed him that there would be no substitution. *See id*. at 15.  Garcia insists that the trial court erred by not halting the proceedings and holding a hearing on his oral motion.  Garcia maintains that the trial court abused its discretion in failing to hold a hearing because Garcia was clearly dissatisfied with his counsel's performance.  (Doc. #1, *Memorandum*, at 11).

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  "[T]he right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment."  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  As the Supreme Court has recently emphasized, however, "the right to counsel of choice 'is circumscribed in several important respects.'"  *United States v. Gonzalez-Lopez*, — U.S. —, 126 S. Ct. 2557, 2561 (2006) (quoting *Wheat*, 486 U.S. at 159).  Notably, the Sixth Amendment guarantees a defendant only "the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds."  *Id*. (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)).  It does not extend to defendants such as Garcia, who requires appointed counsel.  *See id*.; *see also United States v. Hughey*, 147 F.3d 423, 429 (5th Cir.) (The Sixth Amendment protects only a "paying defendant's fair or

reasonable opportunity to obtain counsel of the defendant's choice."), *cert. denied*, 525 U.S. 1030 (1998).

As an indigent defendant, Garcia was represented in this case by a court-appointed attorney. An indigent defendant's right to counsel is more limited than the one accorded to a defendant who can afford to retain his own attorney. In that regard, an indigent defendant is not entitled to have a particular lawyer represent him or to demand a different appointed lawyer except for good cause. *See Morris v. Slappy*, 461 U.S. 1 (1983); *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985). When the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction. *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). The record in Garcia's case shows, however, that his second written motion to dismiss counsel was considered by the trial court and denied without a written order following a hearing. *See Ex parte Garcia*, No. 63,501-01 at 219.

Garcia fails to show that more was required in this instance. In that respect, Garcia cites no authority showing that the trial court was required to halt trial and inquire further under these circumstances. As the Fifth Circuit has noted, "trial courts must necessarily be wary of last minute requests to change counsel lest they impede 'the prompt and efficient administration of justice.'" *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983) (quoting *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978) (citation omitted)), *cert. denied*, 466 U.S. 975 (1984). Garcia fails to demonstrate that the trial court erred in its handling of his motions.

Alternatively, even if there was an abuse of discretion, Garcia has not established that he had a legitimate complaint about his counsel's performance or that he received ineffective assistance of counsel at his trial. In that respect, a review of the written motions filed by Garcia took issue with his counsel's failure to procure an investigator or to file a motion to quash the indictment. Both of those claims are without merit for reasons discussed elsewhere above. Garcia has not shown, therefore, that the state habeas corpus court's alternative decision to reject his claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). It follows that Garcia is not entitled to federal habeas corpus relief on this issue. Because Garcia has failed to establish that he is entitled to relief under the governing federal habeas corpus statutes with respect to any of his claims, the respondent's motion for summary judgment is granted.

## IV.   PETITIONER'S MOTIONS

After the respondent filed his motion for summary judgment, Garcia submitted a response, an amended response, and a motion for leave to conduct discovery. (Doc. #11, #12, #13). Garcia also requests an evidentiary hearing. (Doc. #12). These requests are addressed briefly below.

### A.   Discovery

Discovery is limited in habeas corpus proceedings.  "Rule 6 of the Rules Governing § 2254 cases permits discovery only if and only to the extent that the district court finds good cause." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  "Good cause" may be found when a petition for a writ of habeas corpus "establishes a *prima facie* claim for relief." *Murphy*, 205 F.3d at 814.  Before authorizing discovery, the Court must first conclude that the specific allegations in the petition "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Id.*  In that regard, petitioner's factual allegations "must be specific, as opposed to merely speculative or conclusory, to justify discovery." *Id.*  "Simply put, Rule 6 does not authorize fishing expeditions." *Id.*; *see also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, 513 U.S. 1192 (1995).

To the extent that Garcia's motion could be construed as a request for a continuance to conduct discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, such motions are "generally favored, and should be liberally granted." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992)).  To justify a continuance, however, the Rule 56(f) motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact.  *See Stearns Airport Equip.*, 170 F.3d at 534-35 (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).  In that regard, the movant

"must be able to demonstrate how postponement and additional discovery will allow him to defeat summary judgment; it is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.'" *Stearns Airport Equip.*, 170 F.3d at 535 (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citation omitted)).

In support of his request for discovery, Garcia seeks "full discovery" from the witnesses that his counsel failed to call at trial, namely, Karen McMahon and the unidentified convenience store manager. Garcia also seeks a copy of the store videotape that his attorney did not present. Garcia, who insists that he kicked Officer Wiggins accidently, if at all, argues that this evidence would refute testimony which tended to show that the kick was intentional. Garcia speculates, therefore, that the evidence would show that he resisted arrest but that he did not assault a public servant.[10] Garcia's speculative allegations do not demonstrate the requisite good cause to justify discovery under Rule 6 in this case. *See Murphy*, 205 F.3d at 814. Likewise, these allegations are not sufficient to show that the requested discovery will raise a genuine issue of material fact. Therefore, Garcia's motion for discovery (Doc. #11) is denied.

### B.    Evidentiary Hearing

---

[10]    As discussed above in connection with his ineffective-assistance claims, Garcia has not alleged or shown that either of the uncalled witnesses would have testified on his behalf or that their testimony would have been favorable. Likewise, Garcia has not alleged or shown that a videotape of the altercation actually exists or, if it did, that its contents would have been helpful. Because Garcia failed to present these facts on state habeas corpus review, he deprived the state habeas corpus court of a fair opportunity to address this claim. Thus, Garcia has failed to exhaust these claims as required by the federal habeas corpus statutes.

In his response to the respondent's motion for summary judgment, Garcia requests an evidentiary hearing.   (Doc. #12, at 2).   Garcia does not specify what issue he wishes to address at an evidentiary hearing, noting only that the state habeas corpus court did not have a live hearing on his application.  To the extent that Garcia failed to develop any facts related to his claims in state court, the decision whether to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2).  Under this statute, if an applicant "failed to develop the factual basis of a claim in State court proceedings," then the federal habeas corpus court may hold an evidentiary hearing *only* if:

    (A)    the claim relies on —

        (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).   Garcia makes no mention of 28 U.S.C. § 2254(e)(2) in his pleadings.  Nor does he otherwise attempt to show that he is entitled to an evidentiary hearing under this statute.

The decision whether to conduct an evidentiary hearing is committed to this Court's discretion. *See Michael Williams v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was "Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus"

32

proceedings); *Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999).  An evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims."  *Robinson*, 151 F.3d at 268. "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require."  Rule 8 of the Rules Governing Section 2254 Cases.  This Court has been able to resolve all issues raised in this case by referring to the pleadings, the state court record, and the trial transcripts and exhibits.  Garcia's request for an evidentiary hearing is therefore denied.

## V.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment

of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.   Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.   Therefore, a certificate of appealability will not issue.

VI.   <u>**CONCLUSION AND ORDER**</u>

Based on the foregoing, the Court **ORDERS** as follows:

1.     The respondent's motion for summary judgment (Doc. #8) is **GRANTED**.

2.     The petitioner's pending motion for discovery (Doc. #11) and his request for an evidentiary hearing (Doc. #12) are **DENIED**.

3.      The petitioner's application for a writ of habeas corpus is **DENIED**, and this
         case is **DISMISSED** with prejudice.

4.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on **August 17, 2006.**


Nancy F. Atlas
United States District Judge


35